**CRAIG, Plaintiff-Appellee, v BUREAU OF UNEMPLOYMENT COMPENSATION, et, Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6958.    Decided May 17, 1948.

John C. McCarthy, Cincinnati, for plaintiff-appellee.

Hugh S. Jenkins, John M. Woy, Columbus, Roland B. Lee, Toledo, for Bureau of Unemployment Compensation.

Nichols, Wood, Marx & Ginter, Cincinnati, for The Capitol Barg Dry Cleaning Company.

## OPINION

By MATTHEWS, P.J.:

The Bureau of Unemployment Compensation denied benefits to the plaintiff. On appeal, the Court of Common Pleas reversed the Bureau's decision. This is an appeal from that judgment.

In accordance with §1346-4 GC, the appeal was heard by the Common Pleas Court on the record certified to it by the Bureau of Unemployment Compensation.

The plaintiff was employed by Capitol Barg Dry Cleaning Company from May 6th, 1945 to March 16th, 1946. On the last named date, he quit, for the reason as stated in his claim for benefits, that "This was an unhealthy job. I had to go out and get rugs from homes and offices. I had to take them from the floor and deliver them to the plant. This was dusty work also real dirty. It kept my lungs full of dirt all the time. I was afraid I would get down sick so I quit."

In his claim for benefits filed nine days after he quit, the plaintiff certified that on the day after he quit he was able to work and available for work. He reported regularly to the Bureau, as required, until September 23rd, 1946, during which his efforts to obtain employment were unsuccessful.

The Referee summarized the plaintiff's testimony as follows:

"Claimant stated that he had attacks of bronchitis off and on for a number of years. He stated that several years ago prior to his employment with Capitol Barg Dry Cleaning Company that he had driven a taxi cab and that one of his attacks of bronchitis had occurred about this time and he found it necessary to quit the taxi driving job until he recovered his health and at that time he returned to work as a taxi driver.

"Claimant states that his separation was due to the fact that he found the work to be dusty and unsanitary. He stated that after his first three months of employment he had a desire to quit but was persuaded to remain on and this occurred after another three months of employment but he did not quit at that time. Claimant stated that in the week prior to his actual separation, he noticed that his weight was declining, that he was feeling weak, that he had lost his appetite and did not rest well, and at that time decided that these circumstances were due to the job and that he would quit it. He informed the employer and it was agreed that he would remain until the employer got another driver. It appears that the employer obtained a driver within

a week and that the new driver began work on the following Monday. A physician's statement dated, April 15, 1946, is contained in the file and claimant stated that this was the only occasion on which he had seen the physician and that he had not seen a physician on occasion of the same illness prior to that time. It appeared that claimant's chronic bronchitis existed although perhaps in a dormant state at the time that he undertook to drive a truck for the Capitol Barg Dry Cleaning Company." ·

Analyzing the evidence, the Referee said:

"The evidence in this case respecting claimant's physical condition appeared to indicate that he suffered every once in a while from attacks of bronchitis which caused him to cough considerable and to be stopped up. The evidence indicates that at some previous time when claimant was operating a taxi cab that he had an attack of bronchitis and was very choked up. It appeared then that he was forced to quit the taxi cab company and that when he was again able to work, he returned to employment at the taxi cab company. The evidence also indicated that claimant sought medical attention only one time on April 15, 1946, and he stated that he did not consult this physician at any prior time during 1946.

"The evidence does not seem to sustain the company's contention that claimant quit because he was dissatisfied with the rate of pay because there was evidence to indicate that claimant received more pay after a new agreement was effected than he had prior to the effective date of the agreement.

"The evidence seems to indicate that claimant separated himself from the employment because he feared that continued participation in the job might affect his health. His physician's certificate was dated a month after the date of his separation and it seems reasonable to believe that if claimant was actually ill at the time of his separation that he would have consulted physician before a month passed. Although claimant contended that at the time of his separation he was weak and losing weight, that his appetite was poor and he did not sleep well, there does not appear to be any medical evidence which substantiates this condition.

"Although claimant contended that he frequently considered quitting the job because he felt that it was affecting his health on several previous occasions, the fact remains that he did not actually do so. There is no evidence to indicate that the conditions of work were any more difficult at the time of his separation than they were at the time he

first undertook to perform the duties of the job. The facts indicate that when claimant decided to separate himself from the employment that he volunteered to remain at work until the employer had found a replacement. This appears to nullify his contention that he was unable to perform the work, if his separation was due to this reason, because had that been so, he would not have volunterred to remain until the employer found someone to replace him.

"The evidence indicates that claimant filed claiming benefits as of March 17, 1946, which is the date following the day he was separated. All of these facts seem to nullify claimant's contention that the separation was due to inability to do the work. If claimant quit because of inability to perform the work, he would not be able to work the next day on which he began to claim benefits. While a separation because of actual illness would be a just cause, when a claimant was again able to work he would be bound to return to the work he had left if it was available or he would be ineligible for benefits, because in a similar circumstance the courts have held that a claimant in such a position is unable to work and unavailable for work in his usual trade or occupation.

"Accordingly, in this case it is believed that claimant voluntarily quit his job because of his fear that ill health would result from continuing to do the work. It does not appear that at the time of separation that claimant was in ill health. Consequently, it is believed that claimant voluntarily quit his work without just cause. Under the provisions of §1345-6-d-(9) GC, the claim should be disallowed and benefits denied."

The Referee's decision was that the plaintiff had voluntarily quit his work without just cause and, therefore, disallowed the claim and denied benefits. The Board of Review denied his application for a further appeal.

The jurisdiction of the courts on appeal from the Board of Review is limited by §1345-4 GC, to a determination of whether the decision was "unlawful, unreasonable, or against the manifest weight of the evidence." If the decision is found to offend in any one of the respects named, the court may reverse and vacate, or modify.

The question then is, whether the decision that the plaintiff had voluntarily quit his work without just cause was unlawful, unreasonable, or against the manifest weight of the evidence.

We find no decision of the Supreme Court to guide us in determining the meaning of the phrase "voluntarily quit

his work" as used in §1345-6-d-(9) GC, before the amendment effective September 29th, 1947, providing that the cause of quitting must be "in connection with the work" to be justified. Indeed, we find no case in any jurisdiction applying the phrase to facts identical with the facts in the instant case. We have been cited to two cases decided by Courts of Appeals of this state in which the meaning of the phrase was discussed and the phrase applied to a somewhat different situation.

In **Brown-Brockmeyer Co. v Board of Review, 70 Oh Ap, 370,** the claimant for benefits quit work because the conditions under which she was required to work caused her to suffer constantly from colds. She filed her claim for benefits and reported that she was ready for work, but not for work where she would be subject to severe draughts, the weather still being cold. Her former employment, where she had been subjected to draughts, remained open for her at all times. The Bureau allowed benefits. On appeal, the Court of Common Pleas reversed this decision, and this was affirmed by the Court of Appeals. The court quoted this part of §1345-6 GC:

"(b)   No individual shall be entitled to any benefits unless he or she
"(1)   Is capable of and available for work:
"(2)   Is unable to work in his usual trade or occupation or any other employment for which he is reasonably fitted including employments not subject to this act, or is suffering loss of remuneration by reason of involuntary partial unemployment (as defined in §1345-1 GC)."

And then said:

"We think these two subdivisions must necessarily be considered together.
"In our judgment subdivision one is applicable and determinative under the facts of the instant case. This means capable and available for work she had been doing. It is undisputed that the job was open, but claimant was not capable of or available to take the job."

The Court then discussed the meaning of the word "fitted" and reached the conclusion that it was not synonymous with "suitable" and, at 377, said:

"Neither can we agree with counsel for appellant when they say that claimant's physical condition should be taken

into consideration in determining employment for which she was reasonably fitted. It would be correct to say that she was not fit to do the work for which she was fitted. A better rounded sentence would be to say that by reason of her physical condition she was not fit to do the work for which through experience and training she was fitted. It necessarily follows that she was not available for work. This was due to her physical condition. We have no difficulty in agreeing with the finding of the board of review that claimant was justified in leaving her employment, but when we consider that she left her employment by reason of her physical condition, it can not follow that thereby she would be entitled to unemployment compensation. Nowhere in the chapter on unemployment is any reference made to justifiable retirement from employment."

At no place in its opinion did the court in express terms take notice of the provision in §1345-6 GC, denying benefits where employee had quit work only to instances of quitting voluntarily "without just cause." From the tenor of the opinion, it would seem that that provision was not called to the attention of the Court.

The court seems to say or imply that if the employee was unable to pursue her usual trade without impairing her health under the condition of her present employment, and quit because thereof, she would be ineligible for benefits, even though capable and available for work at her usual trade, under reasonably sanitary conditions. That, in our opinion, is not a correct interpretation of the law. The court seemed to assume the draughts were normal hazards of the work for which the plaintiff was fitted and, that, therefore, she was not capable and available. If the court was justified in making that assumption, we would concur in the conclusion. However, in the report of the case, we do not find any evidence to support this assumption.

The other Ohio case is that of Stevens v The Selby Shoe Company, decided by the Court of Appeals for Scioto County and numbered 510 upon its docket. The claimant in that case was employed on a bracing machine, running cement into shoe lining. The cement injured her hands by burning, drying, and cracking them. She had been employed for two years and this effect had bothered her during the entire period. Treatment gave her no relief. A different cement was procured which made her condition worse. By reason of this the claimant quit, and applied for unemployment benefits, but refused to go back to the work she had quit, but stated that she was willing to accept suitable employment. Her claim

was disallowed by the Bureau. On appeal, the Court of Common Pleas reversed this decision, and, in turn, the Court of Appeals reversed the Court of Common Pleas, and affirmed the Bureau. The Court of Appeals reversed the Common Pleas Court on the authority of Brown-Brockmeyer Co. v Board of Review, supra, and did not discuss the question of whether the claimant had "just cause" for quitting her work or the effect upon her right to benefits in the event she had had just cause for so doing. The provision of §1345-6 GC, on that subject was not mentioned. The opinion recites that she steadfastly refused to return to her former employment, but expressed a willingness to accept "suitable" employment. We are not advised whether she was willing to accept other employment at her usual trade or occupation, or other occupation for which she was fitted under circumstances that would not be detrimental to her health.

In Hinkle v Lenox Furnace Co., the Court of Appeals of Allen County reached a conclusion contrary to that reached in Stevens v Selby Shoe Company, and certified the case to the Supreme Court, because of that conflict, where the case is now pending.

However, we do find that other states have unemployment benefit statutes denying benefits to employees who have voluntarily quit their employment "without good cause", the only difference being that the word "just" is used as the modifier of cause, which we do not think changes the meaning. One such state is Pennsylvania, whose statute made ineligible for compensation any employee whose unemployment was due "to voluntarily leaving work without good cause." And its statute, unlike the Ohio statute, does not specifically render ineligible for benefits an employee who "Quits work to marry or because of marital obligations."

In Bliley Electric Co. v Unemployment Compensation Board of Review, 45 A. (2d) 898, the claimant, Mabel Sturdevant, was employed in 1942 and 1943, as a skilled lathe operator by appellant which was manufacturing radio parts for the United States Army. Her husband was in the Army at Columbia, S. C. She procured leave to visit him there and while she was visiting him she became sick and was confined to a hospital. She registered for work in Columbia, but did not obtain employment. She finally returned to her original employment and applied for benefits for the period while she was available for work in Columbia. The Board allowed benefits. This decision was affirmed by the Court in an unusually comprehensive and convincing opinion in which the meaning and connotations of "Good cause" and "voluntarily" were discussed at great length. At page 903, the Court said:

" 'Voluntarily' and 'involuntarily' are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, wilfulness, volition, intention reside in 'voluntarily,' but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties— these are circumstances that exert pressure upon him and imperiously call for decision and action.

"When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment."

And at 904:

"It must be understood, and at this point we must underline it, that a determination that an employee has left his employment voluntarily with good cause does not of itself entitle the employe to compensation benefits. He must also meet the availability-for-work test provided by the statute. In many, probably in most, instances, the same cause that justifies an employe in leaving an employment will also prevent him from working, and disqualify him from receiving benefits. For instance, an employe who leaves employment because of ill-health; if his illness is severe enough to justify a voluntary leaving of employment, his illness will also, unless he speedily recovers or is readily adaptable to work of another type, justify a finding that he is not able to work."

See, also: Teicher Unemployment Case v Board of Review, 35 A. (2d) 739, in which the same Court had placed the same construction upon the phrase "good cause."

The application of the principle formulated in this opinion and its limitation are found illustrated in Bliley Mfg. Corporation v Unemployment Compensation Board of Review, 45 A. (2d) 906; Same v Same, 45 A. (2d) 908; and Bureau of Employment and Unemployment Compensation v Unemployment Compensation Board of Review, 45 A. (2d) 909.

In Barclay White Co. v Unemployment Compensation Board, 356 Pa. St., 43, the Court said at 48: "We are convinced that 'good cause' was intended to cover reasons which are personal to the employee and extraneous to the employment", and quoted with approval from Bliley v Unemployment Compensation Board, 45 A. (2d) 898, supra.

The Minnesota Unemployment statute provides that if an employee "voluntarily and without good cause attributable to the employer" discontinues his employment, he shall be ineligible for benefits. It will be noticed that, unlike the Ohio statute, the "good cause" must be attributable to the employer to produce the disqualification. In Fannon v Federal Cartridge Corp., et al., 158 A. L. R. (Minn.) 389, 18 N. W. (2d) 349, the Court had occasion to apply this statute to the case of an employee who had quit work because her health was impaired on account of the nature of the work, but through no fault of the employer. It was required to construe the word "voluntarily" as used in the statute. **Brown-Brockmeyer Co. v Board of Review, 70 Oh Ap, 370,** was relied on by the employer for a construction excluding all subjective reasons for quitting the work. The court rejected this construction and held as stated in the first paragraph of the syllabus:

"Where an employee is impelled to terminate his employment because continuance therein would endanger his health, such termination is involuntary rather than voluntary within the meaning of a provision of the unemployment compensation law that an individual shall be disqualified for benefits, and all wage credits earned in an employment shall be canceled, if such individual voluntarily and without good cause attributable to the employer discontinued his employment by such employer."

We concur in the construction placed upon the phrase "voluntarily without good cause" pronounced by the courts of Pennsylvania and Minnesota, and believe they are authorities indicating the proper construction of the phrase "volun-

tarily quit his work without just cause" as that phrase is used in the Ohio statute. We understand that is the construction placed upon the phrase in Hinkle v Lenox Furnace Co., now pending in the Supreme Court. With that conclusion in mind, we shall seek to determine whether the Court can say that the decision of the Bureau in denying the plaintiff benefits was unlawful, unreasonable, or against the manifest weight of the evidence.

Without repeating the facts, it is sufficient to point out that the plaintiff had chronic bronchitis long before he was employed by Capitol Barg Dry Cleaning Company. He had been employed as a driver of a taxi cab and while so employed, he suffered from an attack of bronchitis, and was obliged to quit driving until he recovered, when he returned to that work. He worked for Capitol Barg Dry Cleaning Company for more than ten months under continuous uniform working conditions, without any interruption on account of his health.

It would be difficult to find employment more free from dust and fumes than operating an automobile—taxicab or truck—upon the streets and highways. The taxicab driver's employment does not require him to be subjected to any dust or fumes other than that in the unrestrained atmosphere of the community, and the driver of a truck engaged in collecting rugs for a dry cleaner is subjected only to the additional dust emanating from rugs while he is engaged in taking them from the floor, and loading and unloading them. That would be for only a small fraction of the total time of employment. And the added amount of dust cannot believed to have been great.

The plaintiff qualified his availability for work by the proviso that his work should be where "there is no dust or fumes." When it is considered that he had found that driving a taxicab was injurious to his health, and that driving a truck under the circumstances of his last employment was also harmful to his health, it would seem that if the cause of his quitting was ill health, he would not be available for any employment. If he quit, not because of ill health, but just because he feared that continuance in that employment would injure his health, that fear would render him unavailable for any work for which he was fitted. His unavailability for such work would preclude awarding of benefits.

The Referee weighed this evidence carefully and capably, as is indicated by the analysis which he made of it, and reached the conclusion that the plaintiff did not quit because of ill health, or any other just cause, that he quit voluntarily without just cause.

The most that can be said contrary to the Referee's conclusion is, that reasonable minds might have reached a different conclusion. We are of the opinion that the Referee's conclusion is the correct one.

We are of the opinion that the conclusion of the referee was not unlawful, unreasonable, or against the manifest weight of the evidence.

For these reasons, the judgment of the Court of Common Pleas is reversed, and the findings and ruling of the Bureau of Unemployment Compensation is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion and judgment.