TYLER, APPELLANT, *v.*
ADMINISTRATOR, OHIO BUREAU OF
EMPLOYMENT SERVICES, ET AL.,
APPELLEES.

(No. 1685 — Decided
May 17, 1988.)

*Southeastern Ohio Legal Services*
and *Leonard Berkley,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard H. Lippert,* for appellees.

STEPHENSON, J., This is an appeal from a judgment entered by the Scioto County Court of Common Pleas affirming the decision of the Unemployment Compensation Board of Review disallowing the claim for benefits of Patricia Tyler, appellant herein, on the ground that she had quit her employment *without just cause.*

Appellant's sole assignment of error asserts:

"That the Court of Common Pleas erred in affirming the Board of Review's denial of benefits in finding that there was insufficient evidence to sustain Claimants [*sic*] claim that she was discharged without just cause."

On October 28, 1985, appellant filed an application for the determination of unemployment compensation benefits for the benefit year beginning October 27, 1985. On November 29, 1985, the administrator mailed a decision disallowing benefits, determining that appellant had quit her employment with Druther's International Restaurants without just cause. The available facts did not establish that appellant had a "real, substantial, and compelling reason for becoming voluntarily unemployed." The administrator denied appellant's claim based upon the aforementioned conclusions. On December 20, 1985, the administrator mailed a decision affirming the initial determination, citing as the reason for the affirmance that a review of the original facts plus those submitted in the request for reconsideration did not support a change in the initial determination.

On December 26, 1985, appellant filed her notice of appeal from the administrator's decision on reconsideration. A telephone hearing was held before a referee appointed by the board of review on February 4, 1986. Appellant appeared at the hearing represented by counsel and presented one witness, Peggy Flanagan. Druther's was represented by Jim Carroll, Druther's' regional director. The referee then explained the procedure used in the telephone hearing and the following pertinent evidence was adduced at the hearing. Appellant worked as a full-time waitress with Druther's from March 1, 1985, to October 23, 1985. The manager of the restaurant and appellant's supervisor on the last day she was employed by Druther's was Roger Castle. Appellant began her last day of work October 23, 1985, at 6:30 a.m. At approximately

8:00 a.m. appellant, who was then eight weeks pregnant, became nauseated and vomited. Appellant testified that she vomited a couple of times before Castle came to work at 9:00 a.m. Appellant continued to work, but was still ill, so she asked Castle at 10:30 a.m. if she could go home. According to appellant, Castle told her that no one could be called in to replace her but appellant could leave one-half hour early, at 1:00 p.m. instead of 1:30 p.m.

Approximately one-half hour later at 11:00 a.m. appellant became sick again and asked Castle if she could go home. Castle told appellant to put cold water on her face and sit down in the lobby for a few minutes. Appellant subsequently fell asleep in the lobby and another employee was sent to ask appellant if she was going to return to work. Appellant testified that since Castle had already told her that she could not leave, she had no choice but to work. Appellant admitted that she did not remember Castle ever telling her that she could not leave, but did recall that Castle told her that he did not have anyone that he could call in to work for appellant.

Appellant went back to work for about an hour at her station at the drive-through window. Short of breath and feeling as if she would faint, appellant opened the window for fresh air. At approximately 12:15 p.m., while appellant was taking a completed order to the drive-through window, the bell rang, signalling another customer, and Castle yelled at appellant instructing her to answer the bell as soon as it went off. After that, according to appellant:

"I told him — I said, 'I was busy at the time.' And he said, 'I don't care.' He said, 'I want you to answer the bell as soon as it goes off.' So I told him then — I mean, he was — he had yelled at me for a minute or so. And I took my

hat — or my scarf off and I told him — I said, 'I'm sick and I'm going home.' I said, 'Call it whatever you want.' And he said, 'Fine. Don't bother coming and asking for the job back.' So then I took my hat off. And Mr. Castle had handed me my timecard and told me not to forget to clock out. Then I left. * * * I had told him that I was sick and I was leaving and that you had to be dying to get out of that place or I guess you — I said, 'I guess you have to be dying to get out of this place.' "

The next day appellant turned in her uniform, but did not ask Castle about her job. Also, appellant testified that she did not seek medical attention for this particular incident, attributing her symptoms to the effects of early pregnancy. While most of the other employees knew she was pregnant, according to appellant, she could only assume that Castle knew she was pregnant.

Flanagan, who worked with appellant at the restaurant on the day in question, testified that she heard Castle tell appellant to go to the bathroom and wash her face. Flanagan was busy at the drive-through so she did not hear the conversation between Castle and appellant. She only saw Castle hand appellant the timecard.

Carroll then testified that appellant was a waitress at the Portsmouth, Ohio Druther's Restaurant. The record reflects the following dialogue between the referee and Carroll:

"Q. You were obviously, I guess, not there at the time this separation occurred but what — even though it's hearsay, what information do you have as to how her employment ended?

"A. The information I have says that Ms. Tyler had requested to leave close to the lunch period and Mr. Castle informed her that it would be impossible for him at that time to replace

her and requested that she remain on the shift.

"* * *

"And that he informed her that if she left that that [sic] she was quitting her job."

Carroll admitted that there was no formal written report by Castle with respect to the incident, and he had not seen or received appellant's personnel file. Druther's had no policy that if an employee leaves work for any reason that it is considered a voluntary quit by that employee. Appellant, to the contrary, testified that her employer had a policy that "walking off the middle of your shift was a voluntarily [sic] quit." Appellant's supervisor, Castle, was not present at the telephone hearing.

Appellant's attorney, in her final statement, asserted that appellant was discharged without just cause since appellant had to leave work due to personal illness and her supervisor refused to excuse her from work. In the alternative, according to appellant's attorney, even if the referee concluded that appellant quit, it was with just cause given the supervisor's behavior and his refusal to excuse her from work. After Carroll's final statement the telephone hearing was concluded.

The administrator's decision on reconsideration was affirmed by the board of review in a decision mailed February 7, 1986. That decision provided in relevant part:

"It is claimant's contention she was discharged when she had to leave work early due to illness because Mr. Castle told her to turn in her uniform and not try to get her job back; however, there is insufficient evidence claimant was ever discharged from her employment; therefore, this contention lacks merit. The claimant alternately contends that she had good cause for quitting employment because her boss would not let her go home when she was ill; however, there is in-sufficient evidence claimant was forced to stay on the premises or that she was physically unable to work after waking up in the lobby area; therefore, this contention also lacks merit. Claimant made no attempt to clarify what happened to her job either at the time she walked out or the following day. After considering all the facts and evidence, it is the conclusion of the Referee claimant quit her employment after being yelled at by her supervisor for not answering the bell promptly. As such, claimant did not act in an ordinarily intelligent manner with respect to retaining her employment with Druther's International; therefore, the Administrator properly held claimant quit work without just cause and imposed the disqualification for benefits set forth in Section 4141.29 (D)(2)(a), Revised Code of Ohio. The claim for the week ending November 2, 1985, must remain disallowed."

Appellant filed an application to institute further appeal before the board of review on February 18, 1986, from the referee's decision dated February 7, 1986. The board of review disallowed the application to institute a further appeal after reviewing the entire record. Pursuant to R.C. 4141.28 (O), appellant appealed the decisions of the board of review to the Scioto County Court of Common Pleas. The appeal was determined upon the record with briefs filed by counsel. The court below, in affirming the decision of the board of review, found that the decision appealed from was not unlawful, unreasonable, or against the manifest weight of the evidence. Appellant filed her notice of appeal to this court on May 20, 1987, one day before the date of the judgment entry from which appellant's appeal was filed. Pursuant to App. R. 4(A) a notice of appeal filed before the entry of judgment is treated as filed after such entry and on the day thereof, to-wit: May 21, 1987.

Appellant's sole assignment of error asserts that the court of common pleas erred in affirming the board of review's denial of benefits in finding that there was insufficient evidence to sustain appellant's claim that she was discharged without cause. In order to dispose of the aforesaid assignment of error, two issues must be addressed. The first issue is whether the court below could find competent, credible evidence to support the determination by the board of review that appellant voluntarily quit rather than was discharged by her employer as appellant asserts. The second issue is whether competent, credible evidence can be found in the record to establish that appellant quit her job without just cause. R.C. 4141.28(O) provides the standard of review for the courts and provides in relevant part:

"If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision."

Appellant contends that she was discharged rather than having quit. The conclusion of the board of review was that there was insufficient evidence that appellant was ever discharged. The decision of purely factual questions is primarily within the province of the referee and the board of review, and a reviewing court cannot substitute its judgment for that of the triers of fact. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518, 36 O.O. 167, 170, 76 N.E. 2d 79, 84; *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 45, 23 O.O. 3d 57, 60, 430 N.E. 2d 468, 471; *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 161, 11 OBR 242, 244, 463 N.E. 2d 1280, 1283. The findings of fact of the referee based upon the telephone hearing of February 4, 1986, concluded that after appellant's supervisor yelled at her for not answering the drive-through bell soon enough, appellant stated that she was leaving and Castle could call it a quit or whatever. The referee, who was in the best position to evaluate the testimony of the witnesses, concluded that appellant quit her employment after being yelled at by her supervisor.

Manifestly, the record contains competent, credible evidence supporting the conclusion of the referee that appellant quit her job as the result of the altercation with her boss. There is the testimony of appellant herself that she told Castle that she was sick and going home and that he could call it whatever he wanted. This occurred immediately after Castle reprimanded appellant. It was not unreasonable for the referee to infer that appellant quit as a result of the reprimand rather than her illness. Appellant had approximately forty-five minutes left to work before Castle would have excused her from work. Additionally, appellant had been sick earlier in the day, but waited until she was reprimanded before quitting. The conclusion of the referee that appellant quit rather than was discharged is supported by some competent, credible evidence going to all the essential elements of the dispute. The decision by the court of common pleas finding that the decision appealed from was not unlawful, unreasonable, or against the manifest weight of the evidence is clearly supported by the record.

Appellant also asserts that she should be entitled to unemployment benefits, even if it is concluded that appellant quit, as she quit for just cause. Appellant argues that because she was not permitted to leave early when she felt ill, appellant had no alternative but to quit. What constitutes "just cause" is not clearly defined by the case law,

so each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. *Irvine* v. *Unemp. Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 17, 19 OBR 12, 14, 482 N.E. 2d 587, 589; *Daugherty* v. *Bur. of Emp. Services* (1984), 21 Ohio App. 3d 1, 2, 21 OBR 1, 2, 486 N.E. 2d 242, 243; *Peyton* v. *Sun T.V. & Appliances* (1975), 44 Ohio App. 2d 10, 12, 73 O.O. 2d 8, 9, 335 N.E 2d 751, 752.

The referee concluded that appellant did not act in an ordinarily intelligent manner with respect to retaining her employment with Druther's. This conclusion of the referee is supported by competent, credible evidence. Appellant was permitted to leave one-half hour early at 1:00 P.M. instead of 1:30 P.M., according to her testimony, but appellant left work immediately after the confrontation with Castle at approximately 12:15 P.M. Additionally, the referee concluded that appellant made no attempt to clarify what happened with respect to her continued employment either at the time appellant walked out or the following day when she returned her uniform. Appellant talked to Castle at that latter time, but never inquired about her job status. While appellant did testify that Castle told her not to ask for her job back when she walked out on October 23, 1985, appellant did not attempt to discuss the matter before she left work during her shift.

The temporal proximity of the confrontation and appellant's departure supports the referee's conclusion that appellant left work as a result of the fight rather than the illness despite appellant's assertions to the contrary. Appellant's voluntary termination of employment when she walked off the job as the result of a confrontation with her supervisor over her work per-formance clearly supports the finding of the referee that appellant did not act in an ordinarily intelligent manner with respect to retaining her employment. While this is admittedly a close case, the fact that reasonable minds might reach different conclusions cannot be the basis for the reversal of the decision of the board of review. *Irvine, supra,* at 18, 19 OBR at 15, 482 N.E. 2d at 590; *Craig* v. *Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260, 38 O.O. 356, 362, 81 N.E. 2d 615, 622.

"Moreover, '[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.'" *Irvine, supra,* at 18, 19 OBR at 15, 482 N.E. 2d at 590, citing *Charles Livingston & Sons, Inc.* v. *Constance* (1961), 115 Ohio App. 437, 438, 21 O.O. 2d 65-66, 185 N.E. 2d 655, 656.

For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE, J., concurs.

GREY, P.J., dissents.

GREY, P.J., dissenting. I respectfully dissent.

I agree with the majority opinion that in a close case, the decision of the administrator must be upheld. However, any decision must be lawful, reasonable, and supported by some competent credible evidence.

The referee found that Tyler quit after being yelled at by her boss, and that this was not justification for quitting. Were this the only evidence in the case, I too would affirm. However, the

record is replete with other evidence which mandates a finding of justification.

On the day of her firing, Tyler was about eight weeks pregnant and suffering from nausea and vomiting. She had to lie down and twice was refused permission to leave work. Finally, when the nausea and illness overcame Tyler she informed her boss, Castle, that she "was sick and was going home." The fact that such a declaration by Tyler came on the heels of an altercation between Castle and herself in no way diminishes the fact that Tyler's voluntary quit was for just cause.

R.C. 4112.02(A) provides:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Clearly, to flagrantly discriminate against a woman merely because she is pregnant is a violation of R.C. 4112.02(A). However, certain actions of employers, while not on their face discriminatory, may patently discriminate against pregnant women. Here, for example, to demand that a pregnant employee remain on the job when it is obvious that she is physically unable to do so, eventually causing her to voluntarily quit, clearly violates the spirit if not the letter of the above statute.

Thus, a pregnant woman or any individual with a temporary, debilitating illness is, in essence, caught between a rock and a hard place. A sick employee, if refused permission by a superior to leave work, has one of two choices. The individual can leave the workplace despite his superior's orders. In that instance, the individual is deemed to have voluntarily quit without just cause and is ineligible for unemployment benefits. In the alternative, the employee can stay on the job, but because of the illness be unable to perform adequately. In that instance, the employee would be fired for just cause and again be ineligible for unemployment benefits.

Either way, the pregnant employee loses. I am firmly convinced that if men had babies, or if the employee's medical condition was one common to middle-aged men such as angina, the result in this case would be exactly the opposite.

Thus I dissent.