DAVIS, APPELLANT, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES ET AL., APPELLEES.

(No. 87 CA 26—Decided June 16, 1988.)

*Mary Jo Cusack* and *Richard Gerhardt,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Sherrie Passmore,* for appellees.

ABELE, J. This is an appeal from an August 5, 1987 Pickaway County Common Pleas Court judgment affirming a decision of the Unemployment Compensation Board of Review. The board denied appellant unemployment compensation benefits following the termination of her employment as a registered nurse in March 1977.

The 1977 termination of appellant's employment has a long history of litigation. Appellant applied for unemployment compensation benefits the day after her employment ended in 1977. She also brought a personnel action against her employer, the Pickaway County Board of Health, to contest the termination of her employment. In 1981, we affirmed the Pickaway County Common Pleas Court decision which reversed the State Personnel Board of Review and affirmed the Pickaway County Board of Health's decision to terminate appellant's employment. See *Davis* v. *Pickaway Cty. Bd. of Health* (Feb. 6, 1981), Pickaway App. No. 78-CA-419, unreported. (Appellant claims the Ohio Supreme Court also decided that case, in her favor. Appellant, however, gives us no citation for such an Ohio Supreme Court decision and we can find none.)

In a February 2, 1983 statement on an Ohio Bureau of Employment Services "notice of eligibility issue" form, appellant explained that back in 1977 an employee of the Circleville Bureau of Employment Services office told her she should "quit coming in and bothering the workers" concerning her case. Appellant claims that, as a result, she stopped reporting back to the bureau to register for work as required by R.C. 4141.29(A)(3).

On an Ohio Bureau of Employment Services "request for reconsideration" form dated February 28, 1983, appellant's attorney alleged that appellant was misinformed by a bureau employee concerning her duty to report back to the bureau to register for work. Appellant's attorney cited *Ruozzo* v. *Giles* (1982), 6 Ohio App. 3d 8, 6 OBR 31, 451 N.E. 2d 519, where the court applied the equitable doctrine of estoppel against the government following misfeasance by an Ohio Bureau of Employment Services employee.

The Unemployment Compensation Board of Review held a June 28, 1985 hearing on appellant's claim. Appellant testified she received a booklet which explained her duty to report to the bureau biweekly to register to work and explained the consequences of failing to report. She admitted she probably did not read the booklet. When asked point blank whether the bureau employee ever told her not to report back every other week to register for work, appellant did not answer with a simple "yes":

"Q. My question of you, Miss Davis, is did he ever tell you not to come back on your biweekly reporting date and not file your claims? That is my question.

"A. He said not to come back.

"Q. Did he ever —

"A. Well, that's what I came for was to file a claim. So why would I come back for any other reason?

"Q. My question has not been answered, and I expect an answer. Did he ever tell you specifically 'Don't come back in and file your claims each — every other week'?

"A. 'Do not report back to the unemployment board — unemployment office until the decision of the

Board of Review has been rendered.' And that's what I came for."

In an August 19, 1985 decision, the Unemployment Compensation Board of Review concluded appellant had misunderstood the bureau employee. The board held that "her decision to discontinue filing claims on a biweekly basis, although erroneous, was not prompted by misinformation given her by an official of the Ohio Bureau of Employment Services."

The Pickaway County Common Pleas Court affirmed the board's decision, albeit for a different reason. Contrary to the board's decision, the court held that appellant "was refused permission to complete certain necessary forms at the Bureau." The court, however, determined that contrary to *Ruozzo, supra,* estoppel does not lie against the state. In this regard, the court below cited *Besl Corp.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 146, 74 O.O. 2d 262, 341 N.E. 2d 835, and *Gaston* v. *Bd. of Review* (1983), 17 Ohio App. 3d 12, 17 OBR 58, 477 N.E. 2d 460.

Appellee did not appeal the Pickaway County Common Pleas Court's determination that appellant was refused permission to complete the necessary forms. Appellant appeals the court's determination that estoppel does not apply to the actions of the bureau's employee.

We affirm.

### Assignment of Error I

"The court erred in failing to find that the decision of the Board of Review of the Bureau of Employment Services was unlawful, unreasonable, and against the manifest weight of the evidence for the reason that it is contrary to the fact and contrary to both statutory and case law in Ohio."

### Assignment of Error II

"The court erred in finding that an employee's misinformation coupled with said employee's actions in refusing to allow claimant to file certain reports required by the regulations of the Bureau of Employment Services do not effect an estoppel on the part of the state to then deny claimant benefits for her failure to make filings which the employee refused."

Appellant presents one argument in support of both assignments of error. Accordingly we will discuss both assignments of error together.

Appellant relies on *Ruozzo, supra,* where the court applied the equitable doctrine of estoppel against the state after a bureau employee misinformed the claimant about a filing deadline. The court below disregarded *Ruozzo* and instead relied on *Gaston, supra,* which held the doctrine of estoppel cannot be applied against the state. Appellant attempts to distinguish *Gaston* from the case at bar.

In *Gaston,* a claimant for unemployment compensation filed her application for extended Trade Readjustment Allowances past the one-hundred-eighty-day period imposed by statutes and regulations. The claimant alleged that the bureau's employees misinformed her and failed to provide her with appropriate assistance and information concerning the application process. The *Gaston* court followed *Besl Corp., supra,* which held that estoppel does not lie against the state in the exercise of a governmental function.

Appellant notes that the *Gaston* court emphasized that no provision existed in the statutes or regulations for extension of the one-hundred-eighty-day period in that case. Appellant distinguishes *Gaston* by noting that, in the case at bar, a regulation exists which permits extension of the time requirements for reporting to register for work. Appellant also notes that, while the *Gaston* claimant was merely

given erroneous information, appellant was given erroneous information *and* "precluded from filing her claim."

Although appellant claims *Besl* is also distinguishable from the case at bar, she does not specify in what manner *Besl* may be distinguished. Nor does she attempt to distinguish many other Ohio Supreme Court cases which have followed *Besl* and held that estoppel may not be applied against the state.

In *Griffith* v. *J.C. Penney Co.* (1986), 24 Ohio St. 3d 112, 24 OBR 304, 493 N.E. 2d 959, the court rejected arguments raised by a claimant for unemployment compensation who missed a deadline for filing a request for reconsideration. The appellate court had certified the case to the Ohio Supreme Court as being in conflict with *Ruozzo.* The Supreme Court affirmed in a *per curiam* opinion after reiterating the *Besl* holding that principles of estoppel cannot be applied against the state.

In another case certified to the Supreme Court as being in conflict with *Ruozzo,* the Supreme Court again held in a *per curiam* opinion that estoppel may not be applied against the state. *Sekerak* v. *Fairhill Mental Health Ctr.* (1986), 25 Ohio St. 3d 38, 25 OBR 64, 495 N.E. 2d 14. The *Sekerak* decision rejected an argument by an appellant before the State Personnel Board of Review that estoppel should apply where she relied upon her personnel director's statement that a "ten day" appeal time meant ten working days rather than ten calendar days. The court wrote:

"It is well-settled that as a general rule '* * * the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function.' "

While the *Sekerak* court additionally commented that estoppel is an equitable doctrine and hence has no bearing upon venue and jurisdiction, we believe that that comment does not limit the general rule that estoppel does not apply against the state to only those situations where the application of estoppel would wreak havoc on a requirement of venue or jurisdiction.

The *Sekerak* court noted it did not agree or disagree with *Ruozzo.* The *Sekerak* court instead distinguished *Ruozzo* in a manner that also distinguishes *Ruozzo* from the case at bar. While the notice sent to the claimant in *Ruozzo* offered no information as to filing dates, the notice sent to the appellant in *Sekerak* twice stated that her appeal must be instituted within ten days. In the case at bar, appellant admitted she received a copy of the booklet which stated she must report biweekly to register for work. Appellant further admitted she probably did not read the booklet. Appellant never gave a simple answer to the question of whether the bureau employee specifically told her not to report back to the bureau biweekly to register for work.

In *Sun Refining & Marketing Co.* v. *Brennan* (1987), 31 Ohio St. 3d 306, 31 OBR 584, 511 N.E. 2d 112, the court again refused to apply principles of estoppel against the state. The court wrote:

"Principles of equitable estoppel generally may not be applied against the state or its agencies when the act or omission relied on involves the exercise of a governmental function." *Id.* at 306, 31 OBR at 585, 511 N.E. 2d at 114.

Although the above-quoted sentence contains the qualifier "generally," appellant cites no authority other than *Ruozzo* to support her argument that the case at bar is an exception to the general rule that estoppel cannot be applied against the government.

Due to our holding on the estoppel

issue, and due to the fact appellee did not file a notice of cross-appeal, we need not decide whether the court below correctly deviated from the board's finding that appellant was "misinformed" and instead held that appellant was "refused permission to complete certain necessary forms at the Bureau."

Appellant's first and second assignments of error are overruled.

*Judgment affirmed.*

STEPHENSON, J., concurs.

GREY, P.J., dissents.

STEPHENSON, J., concurring. I concur in the judgment and opinion affirming the lower court's affirmance of the decision of the Unemployment Compensation Board of Review, disallowing appellant's claim for unemployment compensation benefits, but would add the following. R.C. 4141.28(O) provided in pertinent part as follows:

"Any interested party may, within thirty days after notice of the decision of the board was mailed to the last known post office address of all interested parties, appeal from the decision of the board to the court of common pleas of the county wherein the appellant, if an employee, is resident or was last employed or of the county wherein the appellant, if an employer, is resident or has his principal place of business in this state. * * * If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. * * *"

No individual is entitled to a waiting period or benefits for any week, unless he or she has registered at an employment office or other registration place maintained or designated by the Administrator of the Ohio Bureau of Employment Services and that registration shall be made in person or in writing in accordance with the time limits, frequency, and manner prescribed by the administrator. R.C. 4141.29(A)(3). In the instant case, appellant was required to register on a biweekly basis during the relevant time period. Appellant did not register as required, claiming that she failed to do so because she was prevented from doing so and was misinformed by a local bureau employee, and that the agency was thereby estopped to deny her unemployment compensation benefits.

In *Irvine* v. *Unemployment Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 17-18, 19 OBR 12, 14, 482 N.E. 2d 587, 589, the Supreme Court of Ohio stated as follows:

"* * * Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167]. Like other courts serving in an appellate capacity, we sit on a court with limited power of review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. *Hall* v. *American Brake Shoe Co.* (1968), 13 Ohio St. 2d 11, 13 [42 O.O. 2d 6]. The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69, 71 [31 O.O. 2d 108]. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. *Craig* v. *Bur. of Unemp.*

*Comp.* (1948), 83 Ohio App. 247, 260 [38 O.O. 356]. Moreover, '[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.' *Charles Livingston & Sons, Inc.* v. *Constance* (1961), 115 Ohio App. 437, 438 [21 O.O. 2d 65].''

In the case at bar, appellant testified at the hearing before the board of review referee that she had received a booklet from the local agency which contained instructions as to when to file unemployment compensation claims and which specifically indicated that a delay in filing her claims could result in a loss of benefits. Appellant testified that a local bureau employee had told her, with respect to a pending ruling by the State Personnel Board of Review, that she should not come back until the decision of that board had been rendered so that someone could determine whether she was qualified to receive unemployment compensation benefits. Appellant, despite repeated questions by the referee, did not testify that the agency employee had told her not to come back in to file her claims every other week.

The burden of proof is upon the claimant to establish the right to unemployment compensation benefits under the unemployment compensation law of Ohio. *Gaston* v. *Bd. of Review* (1983), 17 Ohio App. 3d 12, 13, 17 OBR 58, 60, 477 N.E. 2d 460, 462; *Shannon* v. *Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53, 44 O.O. 75, 97 N.E. 2d 425, paragraph one of the syllabus. It is apparent that, assuming, *arguendo*, the doctrine of estoppel could be utilized against the state agency herein pursuant to *Ruozzo* v. *Giles* (1982), 6 Ohio App. 3d 8, 6 OBR 31,

451 N.E. 2d 519, appellant's testimony before the referee and board constitutes sufficient competent, credible evidence to support the agency finding that estoppel was inapplicable in that appellant merely "misunderstood" the employee rather than being "misinformed" by the employee. Moreover, with respect to appellant's claim of being prevented from filing biweekly claims, she did not testify that she ever came into the local office to file her claims but was prevented from doing so on any occasion by such office.

Furthermore, the Supreme Court of Ohio in *Sekerak* v. *Fairhill Mental Health Ctr.* (1986), 25 Ohio St. 3d 38, 40, 25 OBR 64, 66, 495 N.E. 2d 14, 16, distinguished its case from *Ruozzo, supra,* on the following grounds:

"Assuming, *arguendo*, that this court is in agreement with the holding in *Ruozzo,* the facts presented therein are nevertheless significantly distinguishable from the cause *sub judice.* This is readily apparent from the fact that in *Ruozzo* the notice sent to the applicant 'offered no information as to filing dates,' while in the instant case, appellant's notice twice stated within a single paragraph that her appeal must be instituted 'within ten (10) days after receipt of this letter.' In view of this considerable distinction, we are compelled to reject appellant's reliance on *Ruozzo* as commanding the application of the equitable doctrine of estoppel in the instant case."

Here, as in *Sekerak, supra,* despite claims of misinformation from a state employee, the presence of other pertinent information to the claimant precludes reliance on the doctrine of estoppel. In *Sekerak,* despite alleged misinformation as to a filing date, the notice provided the correct information. Here, appellant received a booklet and forms advising here that a delay in filing claims could result in a loss of benefits. For the foregoing

reasons, even if *Ruozzo, supra,* is accepted as an accurate depiction of Ohio law regarding estoppel against state agencies, it is manifestly distinguishable from the instant case. Hence, I concur.

GREY, P.J., dissenting. I respectfully dissent. The rule that equitable estoppel will not be applied against the state is only corollary to the doctrine of sovereign immunity which, of course, has been rejected by the Ohio Supreme Court. See *Schenkolewski* v. *Cleveland Metroparks Sys.* (1981), 67 Ohio St. 2d 31, 21 O.O. 3d 19, 426 N.E. 2d 784. *Sun Refining, supra,* recites the language of promissory estoppel, but that case is particularly inappropriate here, first because it deals with a governmental function, *i.e.,* the inspection and safety of boilers. Second, the whole thrust of the case is that procedural requirements are designed to assist, not frustrate, ordinary due process. Unemployment insurance is not governmental; it's insurance. A private insurance company cannot avoid the ordinary effects of estoppel. There is no good reason why a government-operated insurance program is any different.

There is, of course, a very good reason for the concept of estoppel. It is the law's method of achieving what economists refer to as efficiency. In a purely efficient world no invalid unemployment claims would be paid, and no valid claims would be unpaid. Economic efficiency is achieved by discouraging inefficient results, and encouraging efficient results. Where the claimant makes a mistake, the sanction is the loss of benefits. When the agency makes a mistake, it does absolutely no good to impose a sanction on the claimant. Equitable estoppel is, thus, only a way of determining whether the mistake was in fact caused by the agency.

One final comment should be made regarding estoppel and governmental conduct. Who is "the government"? In this democracy it is us; it is our government. When the government employs people, we should assume that these government employees will make mistakes. They may, as was done here, give someone the wrong instructions. When this happens, we should recognize that it is only a mistake, that our government will not fall if we move to correct that mistake.

Most government employees try to do a good job, try to assist people in the proceedings in their departments. Citizens realize this and generally rely on what the government people tell them. By not applying promissory estoppel to actions of government employees, we deny the agency a method of controlling and eliminating mistakes in that agency's procedures. By not applying promissory estoppel to the actions of government employees, we establish as a matter of law that a citizen cannot trust what his government says. Denying benefits to a citizen who is entitled to them is even more detrimental to an agency's system than to grant benefits to someone who is not entitled to them.

In this case there is no question that Davis continued to file claims, and perhaps even made a pest of herself, and discontinued filing only when told to stop by the bureau employee. This is exactly what occurred in *Ruozzo, supra,* and this is, I believe, why the Supreme Court denied certification in *Ruozzo.*

The opinion in *Gaston, supra,* cites and quotes from this court's opinion in *VanTassel* v. *Steenbergen Turkey Farms, Inc.* (Aug. 14, 1981), Lawrence App. No. 1488, unreported, from which I dissented. That case, too, was denied certification by the Supreme Court.

I believe the application of promis-

sory estoppel against a government agency in a proper case is more efficient and more just. The *Ruozzo* court holds the same way. The majority here, and the *Gaston* court go the other way. This issue is ready for certification to the Ohio Supreme Court, and we should entertain and grant such a motion.